UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| WILLEKIS DORSEY, | ) |
| Petitioner, | ) ) ) |
| vs. | ) ) Case No. 4:08-CV-2005 (CEJ) |
| TROY STEELE , | ) ) ) |
| Respondent. | ) |

### MEMORANDUM

This matter is before the Court on the petition of Willekis Dorsey for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254.

### I. Procedural History

Petitioner, Willekis Dorsey, is currently incarcerated in the Southeast Correctional Center, pursuant to the judgment of the Circuit Court of Mississippi County, Missouri. On August 7, 2003, a jury found petitioner guilty of first-degree murder and armed criminal action. On September 24, 2003, petitioner was sentenced to concurrent terms of life and eight years' imprisonment.

The Missouri Court of Appeals affirmed petitioner's conviction and sentence in an order issued on February 22, 2005. State v. Dorsey, 156 S.W.3d 791 (Mo. App. S.D. 2005)(Resp. Ex. G). On June 2, 2005, petitioner filed a *pro se* motion for post-conviction relief under Missouri Supreme Court Rule 29.15. The post-conviction court denied petitioner's motion after holding an evidentiary hearing. On July 31, 2008, the Missouri Court of Appeals affirmed the denial of post-conviction relief. Dorsey v. State, No. 05MI-CV00423 (Mo. Ct. App. August 4, 2008)(Resp. Ex. L).

Petitioner filed a first amended § 2254 petition, asserting the following grounds for relief: (1) trial counsel failed to call witness Linda Williams; (2) trial counsel failed to call witness Hershal Wiley; (3) trial counsel failed to call witness Richard Ditto; (4) trial counsel failed to object to evidence of petitioner's prior bad acts; (5) trial counsel failed to call witnesses Jamie Warfield, Jerriereneika Dorsey, Rodreckies Triblett, and Teddy West; (6) trial counsel failed to investigate witnesses who informed police officers that they say petitioner's co-defendant fleeing from the murder scene; (7) trial court erred in sustaining counsel's hearsay objection to testimony regarding the absence of gunshot stippling on the victim's body; (8) the prosecutor violated Brady[1] by failing to disclose the names and addresses of witnesses who told the police that they had seen petitioner's co-defendant fleeing from the murder scene; (9) juror Essia Mae McCatrey engaged in prejudicial conduct by failing to disclose that her brother and nieces were employees of the Mississippi County Trial Court Department and the Mississippi County jail, respectively; (10) the appellate court erred in denying petitioner's motion for remand and motion to recall the mandate.

II. Background

On May 28, 2000, petitioner, Earl Brown, Tyrone Sheron, Michael Sheron, and Hershal Wiley met with two others to devise a plan to murder the victim, Don Prude. (Resp. Ex. G, 2) (Tr. 231). Earlier that day, Michael had obtained 4.5 ounces of crack cocaine from Prude. Michael told the others at the meeting that he did not want to give the drugs back, so Prude had to be killed. (Tr. 231). Petitioner volunteered to shoot Prude, and Michael gave petitioner a 9mm Beretta Model 92FS handgun to use

---

[1]Brady v. Maryland, 373 U.S. 83 (1963).

2

for that purpose.  (Tr. 232-234).  Petitioner received 1.5 ounces of crack cocaine for agreeing to kill Prude.  (Resp. Ex. G, 3).

On May 30, 2000, Brown, Wiley, and petitioner waited for Prude in Sikeston, Missouri.  (Tr. 240).  Once Prude arrived, Brown flagged down his car and told Prude that he would show him where to pick up Michael's drugs.  (Tr. 240).  Brown then got into Prude's car and directed him to Haywood City, Missouri.  (Tr. 241-242).  Wiley and petitioner followed in a separate car.  Brown told Prude to stop in front of a house and got out of the car, leaving Prude behind.  (Tr. 243).  Shortly thereafter, Wiley stopped his car beside Prude's car and petitioner got out.  (Tr. 244).  Petitioner opened the passenger door of Prude's car, and said "I've got your drugs."  (Resp. Ex. G, 4).  Petitioner then shot Prude four times.  (Tr. 244).

Brown, Tyrone Sheron, Michael Sheron, Wiley, and the petitioner were charged with first-degree murder.  (Tr. 119).  Pursuant to a plea agreement, Brown testified against his co-defendants at their respective trials.  (Tr. 250-254).  In exchange for his testimony, prosecutors agreed to reduce the first-degree murder charge to conspiracy to commit murder and to recommend a fifteen-year sentence.  (Tr. 249).  Wiley, Tyrone Sheron, and Michael Sheron were acquitted.

### III. Legal Standard

Federal courts may not grant habeas relief on a claim that has been decided on the merits in state court unless that adjudication:

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (d)(1)-(2).

3

A state court's decision is "contrary to" clearly established law if "it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme Court] but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005). "The state court need not cite or even be aware of the governing Supreme Court cases, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" Brown v. Luebbers, 371 F.3d 458, 461 (8th Cir. 2004) (citing Early v. Packer, 537 U.S. 3, 8 (2002)). "In the 'contrary to' analysis of the state court's decision, [the federal court's] focus is on the result and any reasoning that the court may have given; the absence of reasoning is not a barrier to a denial of relief." Id.

A decision involves an "unreasonable application" of clearly established law if "the state court applies [the Supreme Court's] precedents to the facts in an objectively unreasonable manner," Payton, 125 S. Ct. at 1439; Williams v. Taylor, 529 U.S. 362, 405 (2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 406. "Federal habeas relief is warranted only when the refusal was 'objectively unreasonable,' not when it was merely erroneous or incorrect." Carter v. Kemna, 255 F.3d 589, 592 (8th Cir. 2001) (quoting Williams, 529 U.S. at 410-11).

IV. Discussion

### Procedural Default

Before a district court may consider a habeas corpus petition, a state prisoner must fairly present his or her claims to the state courts during direct appeal or in post-conviction proceedings. Sweet v. Delo, 125 F.3d 1144, 1149 (8th Cir.1997).

4

Failure to raise a claim in a post-conviction appeal is an abandonment of a claim. Id. at 1150 (citing Reese v. Delo, 94 F.3d 1177, 1181 (8th Cir.1996)). Therefore, a state prisoner who fails "to follow applicable state procedural rules [for] raising claims'…, is procedurally barred from raising them in a federal habeas action, regardless of whether he has exhausted his state-court remedies." Id. at 1151 (citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991)). "[A] prisoner must 'fairly present' not only the facts, but also the substance of his federal habeas corpus claim." Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir.1996). "[F]airly present" means that state prisoners are "required to 'refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue." Id. at 411-12. A state-law claim which is raised in state court which "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." Id. at 412.

A state prisoner can overcome procedural default if he or she can demonstrate cause and prejudice for the procedural default. Dretke v. Haley, 541 U.S. 386, 388-89 (2004); See Coleman, 501 U.S. at 750 (holding that a state habeas petitioner can overcome procedural default by demonstrating cause for the default and actual prejudice or demonstrate that default will result in a fundamental miscarriage-of-justice; Battle v. Delo, 19 F.3d 1547, 1552 (8th Cir.1994)). However, a petitioner's defaulted ground may be reached absent a showing of cause and prejudice if he establishes that a failure to consider its merits will result in a fundamental miscarriage of justice.

Here, petitioner did not raise grounds six, seven, eight, or nine on direct appeal. He also failed to raise grounds five and ten on post-conviction appeal. Petitioner, however, asserts that the Court must consider his defaulted claims because he is

5

actually innocent.  Barring a claim that establishes actual innocence is considered a fundamental miscarriage of justice.  Cox v. Burger, 398 F.3d 1025, 1031 (8th Cir. 2005).  To establish actual innocence, a petitioner must bring forth new evidence and show that it is more likely than not that no reasonable juror would have convicted him in light of that new evidence. Osborne v. Purkett, 411 F.3d 911, 920 (8th Cir. 2005) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)).  "Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim."  Cagle v. Norris, 474 F.3d 1090, 1099 (8th Cir. 2007) (quoting Schlup, 513 U.S. at 316).

To support his actual innocence claim, petitioner submits the affidavit of Earl Brown, the prosecution's witness.  (Pet. Ex. C).  In the affidavit, Brown recants his trial testimony and states that petitioner was not at the meeting held on May 28, 2000, was not at the scene of the murder, and did not shoot the victim.  Instead, Brown states that Tyrone Sheron killed Prude.  Brown states that he lied during trial because he was told to do so by a police officer.  According to Brown, the officer told him to lie, because the police "could not place Tyrone in Haywood" on the day of the crime.  (Pet. Ex. C).

Brown's recantation is not new evidence. See Amrine v. Bowersox, 238 F.3d. 1023, 1028 (8th Cir. 2001)(evidence is only new if it was not available at trial and could not have been discovered earlier through the exercise of due diligence). Petitioner submitted evidence of Brown's recantation during his appeal. (Resp. Ex. G, 6).  During petitioner's post-conviction evidentiary hearing, Brown testified that petitioner was innocent and Tyrone Sheron killed Prude. (Res. Ex. M, 13-16). Because Brown's recantation is not new evidence, petitioner cannot establish an actual

6

innocence claim.  Therefore, the Court finds that grounds five, six, seven, eight, and ten are procedurally defaulted and will not review their merits under § 2254.

In addition to actual innocence, petitioner attempts to show cause and prejudice to overcome procedural default on his ninth ground for relief.  Petitioner claims that he could have not discovered during his state-court proceedings that juror McCatrey's brother and nieces were employed by the Mississippi County Trial Court Department and the Mississippi County jail. Further, petitioner attempts to establish prejudice by claiming that the juror's close family connection with the jail and the trial court creates a legal presumption of bias.  The Court disagrees.  Implied bias applies in 'exceptional' or 'extreme situations,' such as when a juror is an actual employee of the prosecuting agency, the close relative of a participant in the trial, or was a witness or was involved in the criminal transaction. Smith v. Phillips, 455 U.S. 209,222 (1981).  The juror's connection to the jail and the trial court does not fit within any of these situations. Therefore, the Court cannot say that the presence of the juror was the type of extraordinary situation in which the law conclusively presumes bias. For these reasons, petitioner's ninth ground for relief is procedurally defaulted and will not be reviewed.

### Ineffective Assistance of Counsel

Petitioner asserts ineffective assistance of counsel claims in grounds one, two, three, and four. To prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that his attorney's performance fell below an objective standard of reasonableness and that he was prejudiced thereby. Strickland v. Washington, 466 U.S. 668, 687 (1984). With respect to the first Strickland prong, there exists a strong presumption that counsel's conduct falls within the wide range of professionally reasonable assistance.  Id. at 689.  In order to establish prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors,

7

the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.  In order to obtain relief under § 2254(d)(1), however, it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly. Bell v. Cone, 535 U.S. 685, 699 (2002).  Rather, petitioner must show that the Missouri courts applied Strickland to the facts of his case in an objectively unreasonable manner. Id.

### A. Failure to Call Witnesses

In grounds one, two and three, petitioner contends that trial counsel failed to call witnesses Linda Williams, Hershel Wiley, and Richard Ditto.  As a general rule, the decision to call witnesses is a matter of trial strategy and will not support a finding of ineffective assistance. Strickland, 466 U.S. at 690-691.  Strategic decisions made after thorough investigation of law and facts are virtually unchallengeable, even if that decision later proves unwise.  Id.

In order to be entitled to relief on the ground that counsel failed to call witnesses, the petitioner must identify who the witnesses were, whether or not counsel was informed of their existence, establish that the witnesses could have been located through reasonable investigation, would have testified if called and their testimony would have provided a viable defense. State v. Smith, 949 S.W.2d 947, 952 (Mo. App. W.D. 1997); State v. Dudley, 819 S.W.2d 51, 56 (Mo.App. 1991); Thompson v. State, 779 S.W.2d 666 (Mo.App. 1989); Smith v. State, 774 S.W.2d 562, 564 (Mo. App. 1989); State v. Martin, 775 S.W.2d 196 (Mo. App. 1989).  In addition, the petitioner must show that the witnesses' testimony would have probably changed the outcome of the trial.  Hadley v. Groose, 97 F.3d 1131, 1135 (8th Cir. 1996).  The witnesses' testimony must also be credible and more than merely cumulative of the evidence

8

adduced at trial  Henderson v. State, 770 S.W.2d 422 (Mo.App. 1989); Koonce v. State, 768 S.W.2d 188 (Mo. App. 1989); Roberts v. State, 764 S.W.2d 688 (Mo.App. 1988).   If a potential witness' testimony would not have unqualifiedly supported the petitioner, the failure to call such witness is not ineffective assistance of counsel. Garret v. State, 814 S.W.2d 325, 330 (Mo.App. 1991); Hamilton v. State, 770 S.W.2d 346 (Mo.App. 1989).

Petitioner argues that Williams, Wiley, and Ditto would have provided testimony establishing his innocence and contradicting Brown's testimony.  Specifically, Williams would have testified that she overheard Brown telling petitioner's mother that "Willekis didn't do nothing. I know he didn't do nothing."  (Resp. Ex. K, 33).  Wiley, one of the co-defendants, would have testified that he and petitioner went to Haywood City to borrow money from his father and were not present at the scene of the crime.   (Resp. Ex. K, 35-37).   Ditto would have testified that on the day of the murder he saw two cars stopped in the road, one facing eastbound, and one facing westbound.  The drivers of both cars were engaged in conversation.  (Resp. Ex. K, 42-45.).  Ditto did not notice anyone following either car.  (Resp. Ex. K, 42-45).  Petitioner argues that this testimony would have contradicted Brown's testimony that petitioner and Wiley followed Brown and Prude to Haywood City, Missouri.

Williams and Wiley were prepared to testify at petitioner's trial, but trial counsel never called them to testify.[2]  Christopher Davis, petitioner's trial counsel, testified at petitioner's post-conviction evidentiary hearing.  He admitted that petitioner informed him that Williams, Wiley, and Ditto, were potential witnesses.  (Resp. Ex. L,7).  Davis, however, did not call the witnesses because he believed that Brown's credibility was

---

[2]Ditto never indicated during the post-conviction evidentiary hearing whether he was available to testify at trial. (Resp. Ex. K, 42-45)

9

destroyed during cross-examination and that the State had not met its burden of proof.

The Missouri court found that trial counsel's failure did not constitute ineffective assistance of counsel.  The motion court wrote:

> "the testimony of Mr. Davis that he made a tactical decision not to call any witnesses credible.  Further, this Court finds that his stated justification for those decisions to have been reasonable. While in hindsight, given the fact that [Dorsey] was convicted, the decision by Mr. Davis not to call any of the aforementioned witnesses may not have been the best decision; it was reasonable trial strategy decision nonetheless. As such, and as demonstrated by the foregoing recitation of applicable law, this Court cannot find the tactical decision by Mr. Davis, not to call particular witness [sic], to have constituted ineffective assistance of counsel."

(Resp. Ex. L, 8). Petitioner has failed to show that the Missouri courts applied Strickland in an unreasonable manner.  Even if trial counsel acted unreasonably, petitioner has not shown that he was prejudiced by counsel's failure.  Gun residue was found on petitioner's hands.  (Tr. 302-304).  At trial, Michelle Rhoden testified that she saw petitioner on Hickory Street, a few minutes after the murder occurred.  (Tr. 200-202).  Doris Turner also testified that she saw petitioner in Haywood City, near the crime scene on the day of the murder.  (Tr. 186-187).  In light of this evidence, the Court cannot say that there is a reasonable probability that petitioner's outcome would have been different if these witnesses were called to testify.  Grounds one, two, and three are denied

### B. Failure to Object to Uncharged Prior Bad Acts

In ground four, petitioner claims that trial counsel failed to object to testimony that petitioner had sold drugs in the past.  At trial, Brown testified on direct examination that he "started running around and selling drugs" with petitioner

10

approximately a year before the murder. (Tr. 225- 226). Trial counsel did not object to Brown's testimony. On redirect examination, Brown testified that he did not have much experience in dealing drugs and that petitioner was his partner in drug deals. (Tr. 286). Trial counsel objected to this testimony as inadmissible evidence of prior uncharged bad acts. The trial court sustained the objection. (Tr. 286).

On appeal, petitioner argued that his history of drug dealing was inadmissable evidence, and trial counsel's failure to object to such testimony was unreasonable and prejudicial. (Resp. Ex. L, 11). The Missouri Court of Appeals rejected petitioner's argument of ineffective assistance of counsel. The Missouri Court of Appeals held that petitioner failed to present substantial evidence to support his allegations that counsel acted unreasonably and that he was prejudiced by counsel's performance. (Resp. Ex. L, 11). Specifically, petitioner did not ask trial counsel during his post-conviction evidentiary hearing why he did not object during Brown's direct testimony. Petitioner also failed to offer any evidence to prove that counsel failed to exercise the customary skill and diligence of a reasonably competent attorney. (Resp. Ex. L, 11-12).

The Missouri Court of Appeals applied <u>Strickland</u> in a reasonable manner. Conclusory statements are insufficient to support a claim of ineffective assistance of counsel. See <u>Esters v. United States</u>, 883 F.2d 645, 647 (8th Cir.1989). Furthermore, the Court is not convinced that petitioner was prejudiced by trial counsel's failure. As stated above, evidence of gun residue was found on petitioner's hands. (Tr. 302-304). Two witness also saw petitioner near the crime scene on the day of the murder. (Tr. 186-202). Therefore, the Court finds there is no reasonable probability that, but for counsel's failure to object, the result of petitioner's proceeding would have been any different. Petitioner's fourth claim for relief is denied.

**V. Conclusion**

11

In summary, petitioner has failed to establish that the state courts' decisions on his claims were contrary to, or an unreasonable application of, clearly established federal law, or based upon an unreasonable determination of the facts in light of the evidence presented in State court proceedings. 28 U.S.C. § 2254(d).  Because the petitioner has failed to make a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability. See Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997).

A separate judgment in accordance with this Memorandum will be entered this same date.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 21st day of March, 2012.